**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CYD Internacional S.A.**<br>**Santiago, Chile**<br>**and**<br>**Exportadora Aqua Santa S.A.**<br>**Santiago, Chile**<br>**and**<br>**Commercial Greenvic S.A.**<br>**Santiago, Chile**<br>**and**<br>**Exportadora Geofrut Ltda.**<br>**Santiago, Chile** | : | **CIVIL ACTION** |
| **vs.** | : | |
| **M/V ALCAZAR CARRIER**<br>**her engines, boilers, bunkers,**<br>**tackles, gear, winches, appurtenances,**<br>**etc., *in rem*.**<br>**and**<br>**LCL SWEDEN AB**<br>**P.O. Box 4315**<br>**SE-102 67 Stockholm, Sweden**<br>**and**<br>**NYK COOL AB**<br>**P.O. Box 4315**<br>**SE-102 67 Stockholm, Sweden**<br>**and**<br>**ALCAZAR SHIPPING**<br>**Norbulk House**<br>**68 Glassford Street, Glasgow, G1 1UP**<br>**United Kingdom**<br>**and**<br>**NETWORK SHIPPING LTD.**<br>**c/o Del Monte Fresh Produce Company**<br>**241 Sevilla Avenue**<br>**Coral Gables, FL 33134**<br>**and**<br>**NORBULK SHIPPING UK LTD.**<br>**Norbulk House**<br>**68 Glassford Street, Glasgow, G1 1UP**<br>**United Kingdom** | : | **NO.** |

## COMPLAINT IN ADMIRALTY *IN REM AND IN PERSONAM*

### Parties

1. CYD Internacional S.A. ("CYD") is a corporation with an office and place of business located in Chile.

2. Exportadora Aqua Santa S.A. ("Aqua Santa") is a corporation with an office and place of business located in Chile.

3. Commercial Greenvic S.A. ("Greenvic") is a corporation with an office and place of business located in Chile.

4. Exportadora Geofrut Ltda. ("Geofrut") is a corporation with an office and place of business located in Chile.

5 Plaintiffs are shippers and/or receivers/consignees of fruit who regularly import their products on board ocean vessels arriving in the ports of the United States.

6. Defendant, ALCAZAR CARRIER, is a vessel operated as a common carrier of goods in ocean transportation and is now or will be during the pendency of this proceeding within the Eastern District of Pennsylvania.

7. At all material times, Alcazar Shipping (hereinafter "Alcazar"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V ALCAZAR CARRIER, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, Alcazar also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which Alcazar was to deliver the goods in the same good order at a designated place.

8. At all material times, Network Shipping Ltd. (hereinafter "Network"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V ALCAZAR CARRIER, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, Network also was a

bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which Network was to deliver the goods in the same good order at a designated place.

9.  At all material times, NYK Cool AB ("NYK"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the owner, disponent owner, charterer, and/or operator of the M/V ALCAZAR CARRIER, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, NYK also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which NYK was to deliver the goods in the same good order at a designated place.

10. At all material times, LCL Sweden AB ("LCL"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and·was the owner, disponent owner, charterer, and/or operator of the M/V ALCAZAR CARRIER, and engaged in the common and/or private carriage of goods by sea for hire. In addition to being a carrier, LCL also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant to which LCL was to deliver the goods in the same good order at a designated place.

11. At all material times, Norbulk Shipping UK Ltd. ("Norbulk"), was and still is a foreign corporation duly organized and existing under the law, with an office and principal place of business at the address set forth in the caption, and was the manager of the M/V ALCAZAR CARRIER, while the vessel was engaged in the common and/or private carriage of goods by sea for hire. In addition to being the manager of the vessel, Norbulk also was a bailee of the cargo described herein, by virtue of receiving the goods from the shippers under an agreement pursuant

to which Norbulk was to deliver the goods in the same good order at a designated place.

12. At all times material hereto, Defendants were and are now engaged in the business of common carriage and/or private carriage of merchandise by water for hire and owned, operated, managed, chartered, possessed and/or controlled various vessels, including the M/V ALCAZAR CARRIER, as common and/or private carriers of merchandise for hire.

13. The vessel owned and/or operated by the above defendants has used the ports of the Commonwealth of Pennsylvania discharged and loaded cargo therein, been supplied services and handled therein and is subject to service of process under the applicable rules of law in admiralty practice and the statutes of the Commonwealth of Pennsylvania.

14. Plaintiffs were the shippers, consignees or owners of the cargo described more further below, and bring this action on their own behalf and as agents and trustees on behalf of and for the interests of all parties who may be or become interested in said shipment, and cargo as their respective interests may ultimately appear, and plaintiff is duly entitled to maintain this action.

**Jurisdiction and Venue**

15. Plaintiffs by and through their attorneys, Dugan, Brinkmann, Maginnis and Pace, hereby bring this suit against the defendants under the provisions of 28 U.S.C. §1333, as this is an admiralty and maritime claim within the meaning of Rule 9(h) and the supplemental Admiralty Rules of the Federal Rules of Civil Procedure. In addition, jurisdiction is invoked pursuant to 28 U.S.C. §1377 as this is an action arising under an Act of Congress regulating commerce, specifically, the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. §1300 *et seq.* and the Harder Act of 1893, 46 U.S.C. §§190-196.

16. Venue lies within the Eastern District of Pennsylvania under the provisions of 28 U.S.C. §1391.

**COUNT I**

17. In or about February of 2009, in Valparaiso, Chile, 2,080 cases of fresh nectarines, 1040 cases of fresh peaches and 944 cases of fresh plums consigned to CYD were delivered in good order and condition aboard the M/V ALCAZAR CARRIER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

18. In or about February of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVP3139907087, NKLCVP3139907085 and NKLCVP3139907086 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

19. Thereafter, various goods were delivered by the above named defendants to CYD, whereupon it was discovered that CYD's goods were not in like good order and condition as when received aboard the M/V ALCAZAR CARRIER, but were instead damaged, deteriorated in value and unfit for sale or use.

20. The aforesaid damage and loss of CYD's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

21. By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, CYD has sustained damage and loss in an amount in excess of Fifty-Nine Thousand Dollars ($59,000.00).

22. The aforesaid damage and/or loss of CYD's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

    a. failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

    b. failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

    c. failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

    d. failing to use proper care under the circumstances;

    e. allowing the cargo to be contaminated by exposure to oil; and

    f. other and further particulars which will be shown at the time of trial.

23. By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of CYD's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Fifty-Nine Thousand Dollars ($59,000.00).

24. Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by CYD.

25. All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, CYD prays that:

1. Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2. If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Fifty-Nine Thousand Dollars ($59,000.00).

3. Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V ALCAZAR CARRIER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4. Judgment be entered on behalf of CYD and against the defendants plus interest and costs of this action.

5. CYD have such other and further relief in the premises and in law and justice as it may be entitled to receive.

**COUNT II**

26. Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 25 set forth above.

27. In or about February of 2009, in Valparaiso, Chile, 2,136 cases of fresh fruit consigned to Aqua Santa were delivered in good order and condition aboard the M/V ALCAZAR CARRIER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

28. In or about February of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bill of lading numbered NKLCVP3139907079 was issued acknowledging receipt on the vessel of the said shipment in good order and condition.

29. Thereafter, various goods were delivered by the above named defendants to Aqua Santa, whereupon it was discovered that Aqua Santa's goods were not in like good order and condition as when received aboard the M/V ALCAZAR CARRIER, but were instead damaged, deteriorated in value and unfit for sale or use.

30. The aforesaid damage and loss of Aqua Santa's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

31. By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Aqua Santa has sustained damage and loss in an amount in excess of Thirty Thousand Dollars ($30,000.00).

32. The aforesaid damage and/or loss of Aqua Santa's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

    a. failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

    b. failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

    c. failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

    d. failing to use proper care under the circumstances;

    e. allowing the cargo to be contaminated by exposure to oil; and

    f. other and further particulars which will be shown at the time of trial.

33. By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Aqua Santa's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Thirty Thousand Dollars ($30,000.00).

34. Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Aqua Santa.

35. All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Aqua Santa prays that:

1. Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2. If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Thirty Thousand Dollars ($30,000.00).

3. Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V ALCAZAR CARRIER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4. Judgment be entered on behalf of Aqua Santa and against the defendants plus interest and costs of this action.

5. Aqua Santa have such other and further relief in the premises and in law and justice as it may be entitled to receive.

**COUNT III**

36. Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 35 set forth above.

37. In or about February of 2009, in Valparaiso, Chile, 5,480 cases of fresh plums consigned to Greenvic were delivered in good order and condition aboard the M/V ALCAZAR CARRIER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

38. In or about February of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVP3139907066, NKLCVP313990767, NKLCVP3139907069 and NKLCVP3139907071 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

39. Thereafter, various goods were delivered by the above named defendants to Greenvic, whereupon it was discovered that Greenvic's goods were not in like good order and condition as when received aboard the M/V ALCAZAR CARRIER, but were instead damaged, deteriorated in value and unfit for sale or use.

40. The aforesaid damage and loss of Greenvic's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

41. By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Greenvic has sustained damage and loss in an amount in excess of Thirty-Five Thousand Dollars ($35,000.00).

42. The aforesaid damage and/or loss of Greenvic's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

    a.    failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

    b.    failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

    c.    failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

    d.    failing to use proper care under the circumstances;

    e.    allowing the cargo to be contaminated by exposure to oil; and

    f.    other and further particulars which will be shown at the time of trial.

43. By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Greenvic's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Thirty-Five Thousand Dollars ($35,000.00).

44. Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Greenvic.

45. All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Greenvic prays that:

1. Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2. If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Thirty-Five Thousand Dollars ($35,000.00).

3. Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V ALCAZAR CARRIER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4. Judgment be entered on behalf of Greenvic and against the defendants plus interest and costs of this action.

5. Greenvic have such other and further relief in the premises and in law and justice as it may be entitled to receive.

**COUNT IV**

46. Plaintiffs incorporate by reference as though fully set forth herein Paragraphs 1 through 45 set forth above.

47. In or about February of 2009, in Valparaiso, Chile, 32,100 cases of fresh fruit consigned to Geofrut were delivered in good order and condition aboard the M/V ALCAZAR CARRIER for transportation to the United States and delivered to the vessel in Chile in like good order and condition.

48. In or about February of 2009, the aforesaid shipments were loaded aboard said vessel and a clean on-board bills of lading numbered NKLCVP3139907058 and NKLCVP3139907061 were issued acknowledging receipt on the vessel of the said shipment in good order and condition.

49. Thereafter, various goods were delivered by the above named defendants to Geofrut, whereupon it was discovered that Geofrut's goods were not in like good order and condition as when received aboard the M/V ALCAZAR CARRIER, but were instead damaged, deteriorated in value and unfit for sale or use.

50. The aforesaid damage and loss of Geofrut's cargo was the result of breaches by the defendants of its obligations as a common carrier of goods, of breaches by it of the lawful terms and conditions of the bill of lading issued by it.

51. By reason of the breaches of the defendants of the lawful terms and conditions of the bill of lading issued by it and the breaches of the defendants and its obligations as a common carrier of goods, Geofrut has sustained damage and loss in an amount in excess of Two Hundred and Eighty-Five Thousand Dollars ($285,000.00).

52. The aforesaid damage and/or loss of Geofrut's cargo was caused by the unseaworthiness of the vessel and the negligence of the above-named defendants, their agents, servants and employees in:

   a. failing to provide a seaworthy vessel and a seaworthy place for the care, handling, stowage and carriage of the aforesaid shipment;

   b. failing to exercise due and proper care in the handling, stowing, carrying and discharge of said cargo;

   c. failing to safeguard properly said cargo and to prevent damage to it while in their custody and care;

   d. failing to use proper care under the circumstances;

   e. allowing the cargo to be contaminated by exposure to oil; and

   f. other and further particulars which will be shown at the time of trial.

53. By reason of all of the above defendants' negligence and lack of due care and the failure of the defendants to provide a seaworthy place for the handling, stowage, carriage and discharge of Geofrut's goods and the lack of appropriate stowage aboard the said vessel has suffered damages and loss in excess of Two Hundred and Eighty-Five Thousand Dollars ($285,000.00).

54. Notice of claim and claim have been filed with the defendants, but they have failed and refused to pay all or any part of the loss which has been sustained by Geofrut.

55. All of the singular facts and matters set forth herein are true and within the jurisdiction of this Court.

WHEREFORE, Geofrut prays that:

1. Process in the due form of law, according to the practice of this Court issue against the defendants inviting them to appear and answer all and singular the matters aforesaid.

2. If the defendants cannot be found within this District, then all goods, chattels and equipment in the possession of any person, partnership or corporation owned by them or any vessel owned or operated by them or any equipment, storage or gear on any vessel be attached by process of attachment as provided in the admiralty Rules in the amount of Two Hundred and Eighty-Five Thousand Dollars ($285,000.00).

3. Process of attachment in any form of law according to the practice of this Honorable Court in cases of admiralty jurisdiction issue against the M/V ALCAZAR CARRIER, her engines, machinery, tackle, apparel, etc., and that all persons claiming interest in and to said vessels be cited to appear and answer under oath all and singular the matters aforesaid, and that said vessel be condemned and sold to pay the demands as aforesaid with interest and costs.

4. Judgment be entered on behalf of Geofrut and against the defendants plus interest and costs of this action.

     5.     Geofrut have such other and further relief in the premises and in law and justice as it may be entitled to receive.

                   DUGAN, BRINKMANN, MAGINNIS AND PACE


BY:       EM871
      Eugene J. Maginnis, Jr., Esquire
      1880 John F. Kennedy Boulevard
      Suite 1400
      Philadelphia, PA 19103
      (215) 563-3500
      ATTORNEY FOR PLAINTIFFS

Dated: February 18, 2010

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYD Internacional S.A., et al. | : | Civil Action |
| | : | |
| v. | : | No. |
| | : | |
| M/V ALCAZAR CARRIER, et al. | : | |

DISCLOSURE STATEMENT FORM

Please check one box:

■ The nongovernmental corporate party, Plaintiffs, in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☐ The nongovernmental corporate party, ________________, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% or more of its stock:

________________________________________

________________________________________

________________________________________

________________________________________

February 18, 2010
Date

EM871
Signature

Counsel for: Plaintiffs

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**

(a) WHO MUST FILE: NONGOVERNMENTAL CORPORATE PARTY. A nongovernmental corporate party to an action or proceeding in a district court must file two copies of a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.

(b) TIME FOR FILING; SUPPLEMENTAL FILING. A party must:

(1) file the Rule 7.1(a) statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court, and

(2) promptly file a supplemental statement upon any change in the information that the statement requires.